**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                         No. CR 04-1195 JB

SERGIO ROSALES-VALDEZ,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the United States' Motion to Revoke Plea Agreement and Allow Defendant to Withdraw Guilty Plea, filed August 30, 2004 (Doc. 15). The Court held a hearing on this motion on November 29, 2004. The primary issue is whether Arizona's crime of Attempted Aggravated Assault is a "crime of violence" under § 2L1.2(b)(1)(A)(ii) of the United States Sentencing Guidelines ("U.S.S.G."). Because the Defendant Sergio Rosales-Valdez' prior conviction in Arizona for attempted aggravated assault is a crime of violence for purposes of the federal sentencing guidelines, the Court will grant the United States' motion and set aside the plea agreement.

**PROCEDURAL BACKGROUND**

On July 11, 2003, the United States District Court for the District of Arizona sentenced Rosales-Valdez to 14 months in prison for illegally reentering the United States. At the time the Arizona federal court sentenced him, the federal prosecutors in Arizona were aware of his prior conviction for "attempted aggravated assault" in violation of Ariz. Rev. Stat. § 13-1001. <u>See</u>

Transcript of Motion to Revoke Hearing at 5:9 - 6:3 (taken November 29, 2004).[1]  At the sentencing,

Rosales-Valdez objected to the 16-level enhancement for his "prior offense."   Transcript of

Sentencing Hearing, No. CR 03-87,  at 3:11-21 (D. Ariz. taken July 9, 2003), filed on December 15,

2004 attached as an exhibit to the Clerk's Minutes.[2]  The district held that the prior conviction must

qualify as an aggravated felony to warrant the 16-level increase.  See id. at 8:14 - 9: 5.  Because the

prior conviction at issue -- for which Rosales-Valdez was sentenced to less than a year in jail -- did

not satisfy the statutory definition of an aggravated felony, the district court held that the prior

conviction did not warrant a  16-level increase.  See id.  The Judgment states that the court imposed

a sentencing enhancement under 8 U.S.C. § 1326(b)(1), which provides for enhancement for a prior

"felony."[3]  See United States v. Rosales-Valdez, No. CR 03-00087, Judgment in a Criminal Case (D.

Ariz., filed July 11, 2003).

The United States appealed this sentence, and the United States Court of Appeals for the

Ninth Circuit vacated and remanded the sentence in light of its recent decision in United States v.

_____

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

[2] The Court obtained a transcript of the Arizona proceeding, which it attached as an exhibit to the Clerk's Minutes.

[3] The Judgment states: " ACCORDINGLY, THE COURT HAS ADJUDICATED THAT THE DEFENDANT IS GUILTY OF THE FOLLOWING OFFENSE(S): violating Title 8, U.S.C. § 1326(a), Illegal Re-Entry after Deportation, with sentencing enhancement pursuant to Title 8, U.S.C. § 1326(b)(1), a Class C Felony offense, as charged in the Indictment."  At the hearing on this motion, this Court asked the United States to what the "Class C Felony offense" referred in this judgment of conviction.  The United States admitted that it was not sure to what this referred, or how it was integrated into the District Court of Arizona's sentence.  See Transcript of Motion to Revoke Hearing at 6:4-21; id. at 7:24 - 8:5.  The Court notes that it is not clear from the Arizona transcript of the proceedings or from the Judgment if the Arizona District Court considered Rosales-Valdez' prior offense of attempted aggravated assault or to what the "Class C Felony offense" contained in the Judgment refers.

Pimentel-Flores, 339 F.3d 959 (9th Cir. 2003).   United States v. Pimentel-Flores held that attempted aggravated assault need not meet the definition of "aggravated felony" under the sentencing guidelines to qualify as a crime of violence.   See id. at 963.   Accordingly, the Ninth Circuit directed the district court "to impose a 16-level sentencing enhancement for his prior 'crime of violence' conviction."   United States v. Rosales-Valdez, 88 Fed. Appx. 240, 2004 WL 346016, at **1 (9th Cir. Feb. 17, 2004)(unpublished).

On May 16, 2004, United States Border Patrol agents in New Mexico arrested Rosales-Valdez for "reentry of a deported alien previously convicted of an aggravated felony."   The waiver of indictment lists "aggravated felony," but then crosses out "aggravated."   It also indicates, however, that Rosales-Valdez violated 8 U.S.C. 1326(b)(2), which is the provision regarding aggravated felonies.   In the Information, filed the same day as the waiver, Rosales-Valdez is charged with violation of 8 U.S.C. 1326(b)(1), which is the provision for "a prior felony, (other than aggravated felony)."   Information at 1, filed June 23, 2004 (Doc. 9).   The Information also that indicated that Rosales-Valdez "had been convicted of a felony, that being Reentry After Deportation, and thereafter had been deported, excluded, and removed and departed the United States on or about December 24, 2003, while an Order of Exclusion, Deportation and Removal was outstanding . . . ."   Id.   The original complaint against Rosales-Valdez, filed on May 18, 2004, stated that Rosales-Valdez "had been previously arrested and deported from the United States, subsequent to being convicted of an aggravated felony, to wit: Illegal Re-Entry After Deportation . . . in violation of Title 8 [U.S.C. §] 1326(a)(1)[,(]2) and (b)(2)."   Criminal Complaint, No. 04-5329, filed May 18, 2004.

On June 3, 2004, the United States extended a plea offer to Rosales-Valdez.   Included within the plea offer was discovery, which included, among other things, a copy of the Judgment from

Rosales-Valdez' 2003 conviction for "Illegal Re-Entry after Deportation." <u>United States v. Rosales-Valdez</u>, No. CR 03-00087, Judgment in a Criminal Case.

The discovery also contained a report from the United States Border Patrol. <u>See</u> Report of Investigation (dated May 19, 2004). The report indicates that the Border Patrol conducted an investigation "in reference to criminal prosecution sought pursuant to Title 8 U.S.C. § 1326 (b)(2): RE-ENTRY OF AN AGGRAVATED FELON." <u>Id.</u> at 1. The report then lists the various dates that the Defendant had been "deported/excluded" from the United States on December 24, 2003, September 22, 1999, and April 16, 1998. <u>Id.</u> The report also states that "the defendant was convicted on or about 7/11/03 of Illegal Re-entry after Deportation . . . [and] was sentenced to 14 months in jail." <u>Id.</u> The report then states that, "[b]ased on the evidence obtained, a criminal complaint was filed against Rosales-Valdez, charging him with an Immigration criminal violation pursuant to Title 8 U.S.C. § 1326(b)(2) to wit: ILLEGAL RE-ENTRY OF AN AGGRAVATED FELON." <u>Id.</u> at 2. The report, however, then states: "Note: Upon further review of the defendant's criminal record checks, it appears that he does not meet the criteria to be charged with 8 USC 1326 (b)(2). The defendant was sentenced to 45 days in jail, however, the court dismissed the charges." <u>Id.</u>

Included within the plea offer was a written Plea Agreement. In the waiver of rights provision, the Plea Agreement states: "The Defendant hereby agrees to waive these rights and to plead guilty to an Information charging a violation of 8 U.S.C. §§ 1326(a)(1)[,](2) and (b)(1), that being Re-entry of a Deported Alien Previously Convicted of a Felony." In addition, the Plea Agreement contains an enhancement for being previously convicted of a felony. Paragraph 7 of the Plea Agreement also, however, contains a stipulation where the parties stipulated that Rosales-

Valdez' sentencing guideline offense level would be an offense level of nine.  Also within the Plea

Agreement, paragraph 7a states in part:

> This stipulation is based upon the information currently known to both parties;
> specifically, that the defendant has no felony conviction that qualifies as a conviction
> under U.S.S.G. § 2L1.2(b)(1)(A), § 2L1.2(b)(1)(B) or § 2L1.2(b)(1)(C) (or not more
> than two convictions for misdemeanors as defined in § 2L1.2(b)(1)(E)) which became
> final prior to the defendant's most recent removal from the United States.  If the
> United States learns, prior to sentencing in this matter, that the defendant has one or
> more such convictions, the United States reserves the right, in its sole discretion, to
> withdraw this plea agreement.

Plea Agreement ¶ 7(a), at 3, filed June 23, 2004 (Doc. 13).  The federal sentencing guidelines and

the approved "fast-track" program for the District of New Mexico governs the plea agreement.  See

U.S.S.G. § 5K3.1 (governing downward departures in early disposition program cases and providing

the downward departure up to 4 levels "pursuant to the early disposition program").

Rosales-Valdez accepted the offer.  On June 23, 2004, Rosales-Valdez appeared before the

Honorable Don Svet, United States Magistrate Judge, to accept the plea offer and to plead guilty to

the information.  On August 23, 2004, however, counsel for the United States learned that Rosales-

Valdez had a previous conviction for attempted aggravated assault from Maricopa County Superior

Court, Phoenix, Arizona.  The United States contends that this prior conviction was the same

conviction at issue before the Ninth Circuit in United States v. Rosales-Valdez.  See United States'

Motion to Revoke Plea Agreement ¶ 6, at 3.[4]  In United States v. Rosales-Valdez, the Ninth Circuit

---

[4]   The United States, however, did not offer any support for this contention; at the hearing,
the United States admitted that the only evidence offered from the federal proceeding in Arizona is
the Judgment and the Ninth Circuit opinion, which vacated the district court's sentence.  See
Transcript of Motion to Revoke Hearing at 6:14 - 7:2.  Neither of these documents establish that the
prior conviction at issue in the federal prosecution in Arizona was the attempted aggravated assault
conviction at issue in this case.  Although the Court reviewed the transcript from the sentencing by
the federal court in Arizona, it did not clarify the particular prior conviction at issue.  For the
purposes of our analysis, however, it is not crucial to resolve this issue.  The inquiry before this Court

held that, because attempted aggravated assault need not meet the definition of "aggravated felony" under the sentencing guidelines to qualify as a crime of violence, the prior "crime of violence" conviction warranted a 16-level increase. See 2004 WL 346016, at **1. In Rosales-Valdez' prior illegal reentry case, he argued that, before the district court orders the sixteen point enhancement, it must determine that his crime was an aggravated felony. In United States v. Rosales-Valdez, the Ninth Circuit concluded that, pursuant to United States v. Pimentel-Flores, 339 F.3d 959 (9th Cir. 2003), this argument must fail. See 2004 WL 346016, at **1. Thus, the Ninth Circuit vacated his sentence and ordered that, at re-sentencing, Rosales-Valdez receive a 16-level enhancement for this "prior 'crime of violence' . . . ." See id. at **1.

The United States contends that the prior Attempted Aggravated Assault conviction constitutes a crime of violence, thus the offense level should be 24, according to U.S.S.G. § 2L1.2(b)(1)(A).[5] As the United States extended the offer to Rosales-Valdez on the condition that he did not have a "conviction that qualifies as a conviction under U.S.S.G. § 2L1.2(b)(1)(A), § 2L1.2(b)(1)(B) or § 2L1.2(b)(1)(C) which became final prior to the defendant's most recent removal

_____

is whether Rosales-Valdez' prior conviction for attempted aggravated assault was known to the United States Attorneys in New Mexico at the time the plea agreement was entered into, and whether the attempted aggravated assault qualifies as a felony crime of violence under § 2L1.2(b)(1)(A).

[5] The Presentence Report ("PSR") contains the only evidence before the Court documenting the existence of Rosales-Valdez' prior conviction for attempted aggravated assault. See Presentence Report ¶ 20, at 7. The United States Court of Appeals for the Tenth Circuit has held, however: "Generally, a district court may rely on facts in a PSR when making sentencing determinations unless the defendant objects." See United States v. Shinault, 147 F.3d 1266, 1277-78 (10th Cir. 1998). "A defendant's '[f]ailure to object to a fact in a presentence report, or failure to object at the hearing, act as an admission of fact.'" United States v. Rodriguez-Herrera, No. CR-03-1683, 2004 WL 2730107, at *2 (10th Cir. Dec. 1, 2004)(quoting United States v. Shinault, 147 F.3d at 1277-78). Rosales-Valdez did not object to the fact of the attempted aggravated assault in the PSR, and, indeed, Rosales-Valdez' argument assumes the fact of the conviction.

from the United States," the United States revokes the plea agreement with Rosales-Valdez.  The United States contends that the Court should also allow Rosales-Valdez to withdraw his guilty plea if he so desires.

The United States moves the Court for an order allowing the revocation of the plea agreement between the United States and Rosales-Valdez, and allowing Sergio Rosales-Valdez to withdraw his guilty plea.  Rosales-Valdez objects to this motion.

Rosales-Valdez alleges that it is "illogical" that the U.S. Attorney's office in Arizona does not share information with the U.S. Attorney's office in New Mexico.  Rosales-Valdez also asserts that it is "illogical" that the prosecuting attorneys in this case were aware of his conviction for "Illegal Re-entry after Deportation" in the United States District Court for the District of Arizona, but were unaware of the prior conviction for attempted aggravated assault (which was also at issue in the prior conviction in the United States District Court for the District of Arizona).  According to Rosales-Valdez, therefore, when the United States entered into the Plea Agreement, "[t]he government's implied claim that they were not aware of Defendant Rosales-Valdez' previous convictions is extremely unlikely or just plain error."  Defendant's Response in Opposition to the Government's Motion to Revoke Plea at 2, filed November 16, 2004 (Doc. 21).

Rosales-Valdez also contends, regardless whether the United States was aware of his prior conviction for attempted aggravated assault, the Court must first determine whether the prior conviction constitutes an "aggravated felony" as defined in 8 U.S.C. § 1101(a)(43) before the Court considers whether the prior conviction is a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii).  According to Rosales-Valdez, because it is not clear whether his prior conviction for attempted aggravated assault results in a 16-level enhancement, Rosales-Valdez reasonably believed that, at the

time the parties entered into the Plea Agreement, the United States "was offering to forego the time and expense that will be necessary to determine whether or not his prior conviction requires enhancement in return for Defendant's prompt acceptance of responsibility for illegally reentering the United States."  Response at 4.  Moreover, Rosales-Valdez alleges that his conviction for "attempted aggravated assault" is not a "crime of violence" under the U.S.S.G. § 2L1.2.

### U.S.S.G. § 2L1.2

Section 2L1.2 has its own definition of "crime of violence."  It notes that, for purposes of U.S.S.G. § 2L1.2(b)(1), a "'crime of violence' means any of the following: . . . aggravated assault . . . or any offense under federal, state or local law that has an element the use, or threatened use of physical force against the person of another."  U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii)(2003).[6]  The current definition is a result of the 2003 amendment to U.S.S.G. § 2L1.2.  The earlier version of the definition stated that "crime of violence -- (I) means an offense under federal, state, or local law that has an element the use, attempted use, or threatened use of physical force against the person of another; and (II) includes . . . aggravated assault . . . ."  See U.S.S.G. § 2L1.2 cmt. n. 1(B)(ii)(2001).  The Commission amended the definition to clarify the confusion "the previous definition often led to . . . over whether the specified offenses listed in that definition . . . also had to include as an element of the offense 'the use, attempted use, or threatened use of physical force against the person of another.' The amended definition makes clear that the enumerated offenses are always classified as 'crimes of violence,' regardless of whether the prior offense expressly has as an element the use, attempted use,

---

[6] The Court notes that, in his Response, Rosales-Valdez cites to the 2001 version of the Sentencing Guidelines.  The Sentencing Commission, however, amended U.S.S.G. § 2L1.2 in November, 2003, to clarify its definition of a "crime of violence."  Because the date on which the alleged crime occurred in this case on May 15, 2004, the Court will apply the 2003 version of the guidelines.  See U.S.S.G. § 1B1.11(a).

or threatened use of physical force against the person of another."   U.S.S.G. § 2L1.2 cmt. to amend.

651 (2003).

I.   **CATEGORIZATION UNDER § 2L1.2(b): "CRIME OF VIOLENCE" AND
     "AGGRAVATED FELONIES".**

In determining whether a prior conviction qualifies as a "crime of violence" under the

sentencing guidelines, the United States Court of Appeals for the Tenth Circuit has not yet addressed

whether the prior conviction must constitute both an "aggravated felony" as well as a "crime of

violence" to warrant a 16-level increase.  The United States Court of Appeals for the Ninth Circuit,

however, in United States v. Pimentel-Flores, addressed that very issue in the context of a prior

felony conviction of "assault in violation of court order."  339 F.3d at 961.  In United States v.

Pimentel-Flores, the defendant alleged that a prior conviction could only qualify as a crime of violence

if it also constituted an aggravated felony, which, under 8 U.S.C. § 1101(a)(43), requires a term of

imprisonment of at least one year.  See id. at 961.  Because he only received 30 days imprisonment,

12 months probation, and a $1,000 fine for his prior conviction, the defendant asserted that it did not

qualify as an aggravated felony and, therefore, could not be a crime of violence.  See id.  In rejecting

this assertion and holding that the district court did not err in imposing a 16-level "crime of violence"

enhancement, the Ninth Circuit first examined the statutory scheme of 8 U.S.C. § 1326.  See id. at

961-62.  The Ninth Circuit noted that 8 U.S.C. § 1326(b) has two provisions, one which addresses

"a felony (other than an aggravated felony)", and the other which addressed "an aggravated felony."

United States v. Pimentel-Flores, 339 F.3d at 962 (quoting 8 U.S.C. § 1326(b)(1),(2)).  The Ninth

Circuit then explained that 8 U.S.C. § 1101(a)(43) defines an aggravated felony, which includes "a

crime of violence (as defined in section 16 of Title 18 . . . )[,] for which the term of imprisonment [is]

at least one year."   United States v. Pimentel-Flores, 339 F.3d at 962 (quoting 8 U.S.C. §

1101(a)(43)(F)).  The Ninth Circuit then provided the definition of crime of violence under 18 U.S.C.

§ 16 as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

United States v. Pimentel-Flores, 339 F.3d at 962 (quoting 18 U.S.C. § 16).

The Ninth Circuit then considered the structure of the sentencing guidelines by first examining

the pre-2001 amendments of U.S.S.G. § 2L1.2, which stated in relevant part, that all aggravated

felonies received a 16-level enhancement, and all "other felonies" received a 4-level increase.  See

United States v. Pimentel-Flores, 339 F.3d at 962 (quoting U.S.S.G. § 1L1.2(b) (2000)).  The post-

2001 Amendment § 2L1.2(b) provides in relevant part:

> (b) Specific Offense Characteristics

>> (1) Apply the greatest if the defendant was deported, or unlawfully remained in the United States, after–

>>> (A) a conviction for a felony that is . . . (ii) a crime of violence; . . . increase by 16 levels;

>>> ****

>>> (C) a conviction for an aggravated felony, increase by 8 levels.

>>> (D) a conviction for any other felony, increase by 4 levels.

U.S.S.G. § 2L1.2(b)(1)(A),(C),(D)(2003).  The 2001 amendment also included an application note

defining a "crime of violence,"  which was later amended in 2003.  See U.S.S.G. § 2L1.2 cmt. n.

1(B)(iv).  The application note to § 2L1.2 also provides a definition of felony for the purposes of §

2L1.2(b)(1)(A), § 2L1.2(b)(1)(B), and § 2L1.2(b)(1)(D), which is "any federal, state, or local offense

punishable by imprisonment for a term exceeding one year."  U.S.S.G. § 2L1.2 cmt. n. 2.

The Ninth Circuit then held "that under United States Sentencing Guideline § 2L1.2, amended

as effective November 1, 2001, a 'crime of violence' needed only to be a 'felony' as defined in the

application notes--and not an 'aggravated felony' as statutorily defined--to qualify for a 16-level

enhancement."  United States v. Pimentel-Flores, 339 F.3d at 964.  The Ninth Circuit based this

holding on the plain language of the guideline -- using the term "felony," not "aggravated felony" in

§ 2L1.2(b)(1)(A).  See 339 F.3d at 964.  In addition, the Ninth Circuit held that such a reading was

not contrary to the purpose of the 2001 amendment -- which was to create more graduated

enhancements "depending on the  . . . dangerousness of the defendant."  Id. at 965 (quoting U.S.S.G.

appl C, Amend. 632 (2001).  In light of this analysis, the Ninth Circuit held that the district court did

not err in enhancing the defendant's sentence 16 levels for his prior conviction of "assault in violation

of a court order."  Id. at 967.

After deciding United States v.Pimentel-Flores, the Ninth Circuit addressed the appeal

pending from the District of Arizona's sentencing of Rosales-Valdez on July 11, 2003.  The United

States had appealed the district court's calculation of sentencing enhancements.  The United States

contended that, under United States v.Pimentel-Flores, Rosales-Valdez should have received a 16-

level increase pursuant to U.S.S.G. § 2L1.2(b)(1)(A) for his prior conviction of attempted aggravated

battery.  Rosales-Valdez conceded that United States v.Pimentel-Flores "forecloses his argument that

his prior conviction must first meet the definition of aggravated felony."  United States v. Rosales-

Valdez, 2004 WL 346016, at **1.

-11-

## II.   CATEGORIZING WHETHER A PRIOR CONVICTION QUALIFIES AS A "CRIME OF VIOLENCE" UNDER § 2L1.2(b)(1)(A).

When determining if a prior conviction qualifies as a sentencing enhancement under the Sentencing Guidelines, "a court must only look to the statutory definition, not the underlying circumstances of the crime." United States v. Venegas-Ornelas, 348 F.3d 1273, 1275 (10th Cir. 2003)(quoting United States v. Reyes-Castro, 13 F.3d 377, 379 (10th Cir.1993)).  According to the PSR, Rosales-Valdez was convicted of "Attempted Aggravated Assault (felony)" in the Maricopa County Superior Court, in Phoenix, Arizona.  Neither the PSR nor the United States provide under which section of the Arizona Statutes Rosales-Valdez was charged.  The Ninth Circuit's opinion refers to Ariz. Rev. Stat. § 13-1001, but this section only deals with attempt, not the aggravated assault provisions.

Arizona law defines "aggravated assault," among other things, as when a "person commits assault . . . under the following circumstances: . . . 1. If the person causes serious physical injury to another[; or] 2. If the person uses a deadly weapon or dangerous instrument."  Ariz. Rev. Stat. § 13-1204(A)(1), (2).  Both of these circumstances are class 3 felonies.  See Ariz. Rev. Stat. § 13-1204(B). "Assault" is defined as:

> 1. Intentionally, knowingly or recklessly causing any physical injury to another person; or
>
> 2. Intentionally placing another person in reasonable apprehension of imminent physical injury; or
>
> 3. Knowingly touching another person with the intent to injure, insult or provoke such person.

Ariz. Rev. Stat. § 13-1203(A).  Furthermore, Arizona law defines "attempt" as:

> A. A person commits attempt if, acting with the kind of culpability otherwise required

for commission of an offense, such person:

>    1. Intentionally engages in conduct which would constitute an offense if the attendant circumstances were as such person believes them to be; or

>    2. Intentionally does or omits to do anything which, under the circumstances as such person believes them to be, is any step in a course of conduct planned to culminate in commission of an offense; or

>    3. Engages in conduct intended to aid another to commit an offense, although the offense is not committed or attempted by the other person, provided his conduct would establish his complicity under chapter 3 if the offense were committed or attempted by the other person.

Ariz. Rev. Stat. § 13-1001(A).  The Arizona attempt statute also defines the level of the offense according to the underlying substantive offense; if the underlying offense is a class 3 felony, then "the offense attempted is a class 2 felony."  Ariz. Rev. Stat. § 13-1001(C)(2).  Finally, the Arizona statute governing imprisonment for a felony is as follows:

>    C. . . . [T]he term of imprisonment for a felony shall be determined as follows for a first offense:

>    1. For a class 2 felony, five years.

>    2. For a class 3 felony, three and one-half years.

>    3. For a class 4 felony, two and one-half years.

>    4. For a class 5 felony, one and one-half years.

>    5. For a class 6 felony, one year.

Ariz. Rev. Stat. § 13-701(C).

## LAW GOVERNING FAST-TRACK PROGRAMS

U.S.S.G. § 5K3.1 states:

Early Disposition Programs (Policy Statement)

-13-

> Upon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides.

U.S.S.G. § 5K3.1.  Under the guidelines, the United States may ask the court to depart downward only four levels from the defendant's adjusted offense level pursuant to an approved "fast-track" program.

## ANALYSIS

The United States contends that the plea offer it made and that Rosales-Valdez accepted should be withdrawn, because it offered the plea agreement only if Rosales-Valdez had not committed a previous offense that would qualify as a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A) and that the United States belatedly discovered the nature of the offense.  In support of its request, the United States points to language in the agreement.  Rosales-Valdez contends that the language in paragraph is boilerplate and that the Court should ignore that language.  Rosales-Valdez' argument fails, for several reasons.

## I.   THE PLEA AGREEMENT VIOLATES THE SENTENCING GUIDELINES.

Regardless whether the United States knew of his conviction, the plea would be invalidated because it would require a downward departure of more than 4 levels.  Rosales-Valdez disagrees, contending that, as a result of the prior case's resolution, the United States knows that the Ninth Circuit based that decision solely upon earlier Ninth Circuit precedent – precedent that is not mirrored in this Circuit.  Rosales-Valdez argues that the United States' contention that his previous conviction requires an enhancement is therefore speculation.

It is true that <u>United States v. Pimentel-Flores</u> is not the law in the Tenth Circuit.  The Tenth

Circuit has not clearly resolved the issues that United States v. Pimentel-Flores raised.  In addition, the Tenth Circuit has not determined that Arizona's crime of attempted aggravated assault meets the statutory definition of crime of violence so as to require the enhancement that the United States seeks. The Court could not find any Tenth Circuit precedent addressing the precise issue in United States v. Pimentel-Flores.  There are, however, at least two cases discussing whether a particular prior conviction constitutes a crime of violence.  In neither decision did the Court look at whether it was an aggravated felony before deciding if it was a crime of violence.  Instead, the Tenth Circuit proceeded directly to the crime of violence analysis.[7]

There is no reason, however, to believe that it will not become law in this Circuit in the future. Rosales-Valdez contends that a "crime of violence," as U.S.S.G. § 2L1.2(b)(A)(1) uses that term, must also be an "aggravated felony," as 8 U.S.C. § 1101(a)(43) defines that term.  Rosales-Valdez argues that, unless the Court adopts this construction, the 2001 amendment to the guidelines would have been meaningless.  See U.S.S.G. app. C, Amendment 632 (2001)("This amendment responds to concerns raised by a number of judges . . . particularly in districts along the south-west border between the United States and Mexico, that § 2L1.2 . . . sometimes results in disproportionate penalties because of the 16-level enhancement . . . .").  This Court, however, agrees with the guideline and statutory analysis conducted by the Ninth Circuit in United States v. Pimentel-Flores.  In United States v. Pimentel-Flores, the Ninth Circuit addressed the issue of whether holding that a prior conviction can qualify as a crime of violence without also being an aggravated felony conflicts with

---

[7] See, e.g., United States v. Torres-Ruiz, 387 F.3d 1179, 1183-88 (10th Cir. 2004)(concluding that a prior felony of driving while intoxicated lack the requisite intent element to constitute a "crime of violence"); United States v. Munguia-Sanchez, 365 F.3d 877, 878-81(10th Cir. 2004)(holding that a prior offense for sexual abuse of a minor was a crime of violence warranting a 16-level enhancement).

the purpose of the 2001 amendments.  See 339 F.3d at 965-66.  In response, the Ninth Circuit stated:

> Defendant contends the Reason for Amendment should be read to prohibit any higher
> enhancement than would have applied under the old guideline.  We disagree.  One
> reason for the amendment was to provide "a more graduated sentencing enhancement
> of between 8 and 16 levels."  U.S.S.G. app. C., Amendment 632 (2001).  But this
> does not rule out the possibility that some priors would deserve greater enhancement
> than had been true under the former guideline.  The Reason for Amendment states
> that the new approach also graduates the enhancements "depending on the . . .
> dangerousness of the defendant."  Ibid.  The Commission might well have concluded
> that certain crimes of violence warranted greater or lesser enhancements without
> regard to the actual sentence previously imposed.  In this regard, certain "crime of
> violence" offenses, which under the old guideline received a 16-level enhancement,
> now receive a lesser enhancement under the amended guideline.  For example, under
> the old guideline, property offenses that were considered crimes of violence under 18
> U.S.C. § 16(a), were considered aggravated felonies subject to a 16-level
> enhancement.  The new guideline's definition of "crime of violence" excludes such
> property offenses from the ambit of offenses that qualify for a 16-level enhancement.
> In this way, the definition of "crime of violence" for which a 16-level enhancement is
> now applied was, in fact, narrowed by the amendment.  In contrast, the use of force
> against a person was considered sufficiently dangerous to warrant 16 levels regardless
> of the actual sentence previously imposed. This comports with the stated rationale for
> the guideline amendment.

Id.  The prior conviction, therefore, need not qualify as an "aggravated felony" under 8 U.S.C. §

1101(a)(43)(F) -- under which the actual sentence imposed must be at least one year -- for it to

qualify as a felony "crime of violence"-- under which the maximum term punishable must be one year,

regardless of the sentence actually imposed.

The plea agreement contravenes the Sentencing Guidelines and is thus improper.  The law

indicates that Rosales-Valdez' prior conviction requires a 16-level enhancement.  The Court will grant

the United States' motion and proceed to sentencing only if Rosales-Valdez does not withdraw his

plea.

Rosales-Valdez states that, if the Court enhances his sentence as the United States requests,

he will likely challenge the reasoning behind the Ninth Circuit's holding.  The Court recognizes the

possibility of an appeal.  Nevertheless, the Court must make the best decision it can and allow the appellate courts to correct any error it may make.

## II.    ROSALES-VALDEZ' PRIOR CRIME MEETS THE DEFINITION OF A "CRIME OF VIOLENCE" SET FORTH IN § 2L1.2.

Rosales-Valdez' contends that his prior conviction for "attempted aggravated assault" does not meet the definition of a "crime of violence" pursuant to U.S.S.G. § 2L1.2.  Rosales-Valdez' prior crime is not one of the listed offenses.  Rosales-Valdez concludes, therefore, to qualify as a "crime of violence" under the definition of "crime of violence" in § 2L1.2 cmt. n. 1(B)(iv), his prior offense, attempted aggravated assault, must have "as an element the use, attempted use, or threatened use of physical force" against another person.

The Court first notes that, although "attempted aggravated assault" is not one of the enumerated offenses in § 2L1.2 cmt. n. 1(B)(iv), "aggravated assault" is an offense enumerated in the crime of violence definition.  A prior conviction of an enumerated offense automatically qualifies as a crime of violence warranting a 16-level increase regardless whether the prior conviction actually contained an element of the "use, attempted use, or threatened use of physical force."  United States v. Munguia-Sanchez, 365 F.3d 877, 880-81 (10th Cir. 2004)(holding that the crime of violence definition presents a disjunctive test under which a crime is either enumerated or contains the "use, attempted use, or threatened use of physical force").  The question then becomes whether, by being convicted of attempted aggravated assault, as opposed to aggravated assault, the offense no longer falls withing the enumerated offenses listed in § 2L1.2 cmt. n. 1(B)(iv)'s crime of violence definition.

Principles of statutory construction apply to interpreting the sentencing guidelines.  The Court, therefore, should first look at the guideline's plain language and, if unambiguous, apply the

words of the statute as they appear on its face.  The § 2L1.2's crime of violence definition states: "'Crime of violence' means any of the following: . . . aggravated assault." § 2L1.2 cmt. n. 1(B)(iv).  The definition does not, however state that a conviction for attempt of any of the enumerated offenses is sufficient to qualify as a crime of violence.  Application note 5 to § 2L1.2, however, states: "Prior convictions of offenses counted under [§ 2L1.2](b)(1) include offenses of . . . attempting[] to commit such offenses."  U.S.S.G. § 2L1.2 cmt. n. 5 (2003).  Under the plain language of § 2L1.2, therefore, "attempted aggravated assault" is a crime of violence under § 2L1.2(b)(1)(A)(ii), and warrants a 16-level increase.

Although the Tenth Circuit has no addressed this particular question, the United States Court of Appeals for the Seventh Circuit, in an unpublished decision, held that a prior conviction of attempted robbery constituted a crime of violence for the purposes of sentence enhancement under § 2L1.2.  See United States v. Granados-Marin, 83 Fed. Appx. 834, 836-37, 2003 WL 23018565, at **2 (7th Cir. December 18, 2003)(unpublished decision).  In reaching this conclusion, the Seventh Circuit reasoned:

> If an offense is specifically listed in the definition of a crime of violence under § 2L1.2, then it warrants a 16-level increase regardless whether the defendant's prior crime actually involved force. See United States v. Vargas-Garnica, 332 F.3d 471, 474 (7th Cir. 2003); see also United States v. Unthank, 109 F.3d 1205, 1209-10 (7th Cir.1997) (holding that offense enumerated in crime-of-violence definition under § 4B1.2 was conclusively crime of violence regardless of circumstance).  Robbery is specifically listed in the crime-of-violence definition, see U.S.S.G. § 2L1.2, comment. (n.1)[2002], and prior convictions for offenses counted as crimes of violence include attempts to commit such offenses, see U.S.S.G. 2L1.2, comment. (n.4) [2002].  Thus, § 2L1.2 mandates classifying the attempted robbery conviction as a crime of violence.  See [United States v.] Vargas-Garnica, 332 F.3d at 474.

United States v. Granados-Marin, 83 Fed. Appx. at 836, 2003 WL 23018565, at **2.[8]

Although the unpublished Seventh Circuit decision is not binding precedent, the Court finds its interpretation of the guidelines and the case law persuasive. Because Rosales-Valdez has a prior conviction of attempted aggravated assault, "§ 2L1.2 mandates classifying the attempted [aggravated assault] conviction as a crime of violence." See id.[9]

Rosales-Valdez also alleges that the State of Arizona requires no "element [of] the use, attempted use, or threatened use of physical force" for a conviction of attempted aggravated assault. Because the Court has already determined that "attempted aggravated assault" qualifies as a crime of violence based on the enumerated offenses in the definition, the Court need not address this issue. See United States v. Ceron-Sanchez, 222 F.3d 1169, 1172-73 (9th Cir. 2000)(pre-2000 amendment)(discussing the Arizona aggravated assault/general assault statutes in the context of 18 U.S.C. § 16(a),(b) and concluding that "[e]ach of the three subsections of 13-203(A) [the Arizona statute on "assault"] requires either the use, attempted use, or threatened use of force against the person of another, and by incorporation, a conviction under Ariz. Rev. Stat. § 13-204(A)(2) meets the definition of crime of violence set out in 18 U.S.C. § 16(a).").

---

[8] The Seventh Circuit decided United States v. Granados-Marin based on the 2002 version of the sentencing guidelines. The Sentencing Commission amended the definition of "crime of violence" in 2003; however, the purpose of this amendment was to clarify the definition, and did not make substantive changes thereto. See U.S.S.G. app. C, Amendment 658. The Seventh Circuit's analysis based on the 2002 version, therefore, is relevant to our analysis under the 2003 version. Also, the Seventh Circuit's reference to attempts, U.S.S.G. 2L1.2, comment. (n.4)(2002), is not note 5 under the 2003 version of the guidelines. The language in both versions, however, is identical.

[9] In United States v. Granados-Marin, the Seventh Circuit also reached its conclusion under the "use, attempted use, or threatened use of physical force" approach. The Court sees no reason to make sure an analysis of Arizona law. See United States v. Ceron-Sanchez, 222 F.3d 1169, 1172-73 (9th Cir. 2000)(pre-2000 amendment).

### III.   IT IS IRRELEVANT WHETHER THE UNITED STATES WAS OR SHOULD HAVE BEEN AWARE OF ROSALES-VALDEZ' PRIOR CONVICTION.

Rosales-Valdez believes that the United States was aware of his conviction for attempted aggravated assault at the time that it offered the plea.   Rosales-Valdez contends that the United States' contention that it was unaware of his prior conviction is ambiguous based upon its own recent interaction with him regarding this issue.   Rosales-Valdez argues that the United States' implied assertion that it was not aware of Rosales-Valdez' previous convictions is unlikely or error.

There is no doubt that the "United States" was aware of his prior conviction given his recent dealings with the United States Attorney's office in Arizona.   But that the United States Attorney's office in Arizona knew about the conviction does not necessarily mean that the United States Attorney's office in New Mexico knew about the conviction.   Rosales-Valdez argues that the idea that the United States Attorney's office in Arizona does not share information with the United States Attorney's Office in New Mexico is illogical, but given the crush of immigration cases in both districts, the Court is not surprised that each office would know the same thing about all defendants.

Rosales-Valdez asserts that it is likewise illogical to assume that the prosecuting attorneys in this case were aware of his previous conviction for illegal reentry on June 23, 2004 when they filed the pending Criminal Information, but were not aware of the previous conviction.   See Information at 1.   But again, given the number of immigration cases, and, indeed, criminal cases, in the district, the Court does not believe it is impossible that a defendant's prior convictions are not completely known at the time of plea negotiations.   This case is not the first such case the Court has seen.

On the other hand, the Court is also convinced that the fact the United States offered Rosales-Valdez a plea which did not include a 16-level enhancement did not come as a surprise to him.

-20-

Rosales-Valdez could reasonably have believed the United States, at the time that it offered the plea, was offering to forego the time and expense that would be necessary to determine whether his prior conviction requires the enhancement in return for his prompt acceptance of responsibility for illegally reentering the United States.  Counsel for both parties are officers of the Court, and the Court accepts their representations to the Court.

At the time of the offer, the United States knew, or the local office could have known, of Rosales-Valdez' prior conviction.  But there is nothing in the Plea Agreement that put a duty of due diligence on the United States.  The agreement simply says that, if Rosales-Valdez had certain convictions, the United States had the right to back out of the agreement.

A plea agreement is a contract.  Both parties to the agreement must live up to his or its end of the plea agreement.  Even if the United States had easy access to the fact of Rosales-Valdez' previous misconduct, and chose not to use that access before offering the plea to Rosales-Valdez, the Court must hold him to his bargain.  If Rosales-Valdez has a conviction for a crime of violence, the Court will recognize the Plea Agreement as revoked and allow him to withdraw his plea.

**IT IS ORDERED** that the United States' motion is granted.  The plea agreement between the United States and Defendant Sergio Rosales-Valdez is recognized as revoked and the Defendant is allowed to withdraw his guilty plea.

_____
UNITED STATES DISTRICT JUDGE

-21-

*Counsel:*

David C. Iglesias
  United States Attorney for the
    District of New Mexico
Norman Cairns
  Assistant United States Attorney for the
    District of New Mexico
Albuquerque, New Mexico

*Attorneys for the United States*

Lawrence Chacon
Albuquerque, New Mexico

*Attorney for the Defendant*